USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
PIONEER NAVIGATION LTD.,  :
 :
                Plaintiff,  :
 :
-v-  :
 :    1:19-cv-02938-GHW-SDA
 :
CHEMICAL EQUIPMENT LABS, INC.,  :
 :    MEMORANDUM OPINION AND
              Defendant.  :    ORDER
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Petitioner Pioneer Navigation Ltd. ("Pioneer") entered into a contract (the "Charter") with Respondent Chemical Equipment Labs, Inc. ("CEL") to ship road salt from Venezuela to the United States. The Charter contained a *force majeure* clause and an arbitration clause. The vessel bearing the road salt shipment that was the subject of the Charter never received authorization to depart from Venezuela. CEL communicated to Pioneer that it believed the Venezuelan government's failure to authorize the salt shipment constituted a *force majeure* event that excused its performance under the Charter. Pioneer disagreed and initiated arbitration. The arbitration panel found in favor of Pioneer. Pioneer then petitioned to confirm, and CEL moved to vacate, the arbitration award. On December 11, 2019, Magistrate Judge Aaron issued a Report and Recommendation recommending that Pioneer's petition be granted and CEL's motion be denied. CEL objected to Judge Aaron's Report and Recommendation. Because CEL largely recycles arguments that it made before Judge Aaron and Judge Aaron's thorough and well-reasoned Report and Recommendation does not contain clear error, Pioneer's petition to confirm the arbitration award is GRANTED, CEL's motion to vacate the arbitration award is DENIED, and the Final Award is CONFIRMED.

**I. BACKGROUND**[1]

    **A. Facts**

In 2014, CEL agreed to purchase salt from Servicios & Suministros Petroleras Y Gasiferos ("SSP&G"), a Panamanian corporation. SSP&G had arranged to buy the salt from Empresa Nacional Salinera ("ENASAL"), a unit or division of PDVSA Industrial, which was itself a division of Petróleos de Venezuela, S.A. ("PDVSA"), the Venezuelan state oil company. Declaration of Edward Morgan ("Morgan Decl."), Ex. B to Declaration of Keith W. Heard ("Heard Decl."), Dkt No. 11-2, ¶¶ 7, 11; Sales Agreement, Ex. 4 to Morgan Decl., Dkt No. 11-3. CEL's April 30, 2014 contract with SSP&G required SSP&G to load the salt into CEL-nominated vessels "in Peninsula de Araya at Puerto Sucre Port, Venezuela." Sales Agreement ¶ 5. In the contract, SSP&G represented that it had all necessary licenses and government permits for the exportation of the salt. *Id.* at 1 (preamble). Over the next seven months, CEL purchased road salt and had it loaded on six different vessels for transportation to ports in the United States. Morgan Decl. ¶ 12.

In December 2014, Pioneer and CEL entered into the Charter, a contract of charter party. Petition to Confirm Arbitration Award ("Petition"), Dkt No. 1, ¶ 7; Charter, Ex. 1 to Petition, Dkt No. 1-1; Answer to Petition to Confirm Arbitration Award ("Answer"), Dkt No. 20, ¶ 7. Pursuant to the terms of the Charter, Pioneer, as disponent owner[2] of the GENCO OCEAN, let the Vessel to CEL, for a single voyage for the carriage of 25,000 metric tons of salt in bulk from Araya to ports on the U.S. East Coast, including Wilmington, Delaware, and Baltimore, Maryland. Petition ¶ 7; Answer ¶ 7. The Charter contained a *force majeure* clause, which stated:

> Seller and buyer shall be excused from the performance of any obligation hereunder when the cause of such non-performance is due to Force Majeure event or condition, in which case the quantities of the products so affected shall be eliminated from this agreement without liability, but this agreement shall otherwise remain unaffected. A

---
[1] For a more detailed recitation of the relevant background to this dispute, see Judge Aaron's Report and Recommendation ("Report and Recommendation" or "R&R"), Dkt No. 24.
[2] "A 'disponent owner' does not hold legal title to a vessel, but for purposes of the charter party acts as if he does." R&R at 2 (quoting *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 693 n.1 (2d Cir. 1978)).

> Force Majeure event or condition shall be construed to include, without limitation, the event of war, fire, flood, strike, labor trouble from whatever cause arising and whether or not the demands of the employees are reasonable and within the affected party's power to concede, accident, riot, acts of god breach of contract by seller's supplier and/or subcontractor, and any contingencies of like or different character beyond reasonable control of either party and interfering with production, supply, transportation or handling of the products covered herein, or restraint of princes, rulers or people; embargoes; seizure under legal process, hurricanes; tropical storms; typhoons; civil commotions; earthquakes; explosions; collisions; standings and accidents of navigation; accidents or to machinery or to loading equipment; closing by the local authorities of the salt lagoons, or withdrawal by the local authorities of any required export permit; or any other causes beyond the sellers or the buyers control what so ever; always provided that such events affect the parties . . . or cargo; hurricanes; tropical storms; typhoons; floods; frosts; fogs; fires; blockades; riots; insurrections; civil commotions; earthquakes; explosions; collisions; strandings and accidents of navigation; closing by the local authorities of the loading terminals, or withdrawal by the local and government authorities of any required export permit; or any other causes beyond the sellers' or by compliance with any order or request of the United States Government, or any officer, department, agency or committee thereof, or by compliance purchase of the products covered under this agreement for the purposes of national security.

Charter, Clause 52, Rider at 12-13.

In accordance with the terms of the Charter, Pioneer delivered the Vessel at Araya within the designated laycan dates and tendered Notice of Readiness confirming the Vessel's availability for loading of the cargo at the designated load port as of December 11, 2014. Petition ¶ 8; Answer ¶ 8; Morgan Decl. ¶ 14. Hence, loading began on December 11, 2014. Final Arbitration Award ("Final Award"), Dkt No. 1-2, at 4; Morgan Decl. ¶ 14.

The next day, however, the Vessel's Master sent an email stating that the loading operation was stopped because the Custom Authority "never received any Letter of Authorization to load your Rock Salt cargo," and that "[t]his may need your urgent action to resume the loading operations." Final Award at 4; Morgan Decl. ¶ 15; Ex. 17 to Morgan Decl., Dkt No. 11-6. The vessel never received authorization to depart from Venezuela and the salt that had already been loaded onto the vessel was unloaded. Final Award at 10; Ex. 39 to Morgan Decl., Dkt No. 11-7.

Thereafter, Pioneer advised CEL that it was holding it liable for all expenses and damages arising out of the incident. Final Award at 11; Morgan Decl. ¶ 39, Ex. 42 to Morgan Decl., Dkt No.

11-7. In response, CEL stated that it believed the situation fell within Clause 52 and thus its performance was excused. Final Award at 11; Morgan Decl. ¶ 39.

**B. The Arbitration Proceedings and the Final Award**

The Charter contained an arbitration clause under which disputes arising out of or relating to it were to be submitted to arbitration in New York. Petition ¶ 12; Answer ¶ 12. Pioneer commenced arbitration in accordance with this clause. Petition ¶ 13; Answer ¶ 13. A panel of three arbitrators (the "Panel") was selected as follows. Pioneer selected one arbitrator and CEL selected another; those two arbitrators then selected a third to serve as Chairman. Petition ¶ 14; Answer ¶ 14. On January 31, 2019, the Panel majority issued the Final Award in favor of Pioneer. Final Award at 32. In a 2 to 1 decision, the Panel majority determined that CEL's failure to perform under the Charter was not excused under Clause 52. *Id.* at 21-30. The Panel majority noted that "[t]he record of events on December 12, 2014 is replete with on-scene references to the lack of proper export documentation as the reason for the stoppage and offloading of the Vessel's cargo." *Id.* at 23. Thus, the majority concluded that the *force majeure* clause did not apply because CEL did not "carr[y] its burden of establishing that an export permit and authorization were in place for this shipment and that the facts and circumstances leading to the Venezuelan Authorities' intervention were not unforeseeable and not beyond its control." *Id.* at 30.

**C. Prior Proceedings and the Report and Recommendation**

Pioneer filed a petition to confirm the arbitration award on April 2, 2019. Dkt No. 1. On April 30, 2019, CEL filed a motion to vacate the arbitration award. Dkt No. 9. Judge Batts—to whom the case was assigned at that time—referred the case to Magistrate Judge Aaron on November 14, 2019. Dkt No. 23.

Judge Aaron issued a Report and Recommendation on December 11, 2019. Dkt No. 24. After a thorough review of the relevant facts, Judge Aaron concluded that "[t]he Panel majority applied the correct law regarding force majeure." *Id.* at 22. Noting that CEL relied heavily on

4

Arbitrator Sheinbaum's dissent from the Panel majority's decision, Judge Aaron held that "the inquiry on a motion to vacate is not whether the dissent is more or less persuasive than the majority decision" but rather whether "the Final Award that was issued by the Panel majority presented a colorable justification for the outcome reached." *Id.* at 23 (citing *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008)). Judge Aaron concluded that there was "such a colorable justification" for the panel majority opinion. *Id.*

CEL filed objections to the Report and Recommendation on December 26, 2019. Objections, Dkt No. 25. Pioneer filed a response to CEL's objections on January 9, 2020. Response, Dkt No. 26. The case was reassigned to my docket on February 20, 2020.

## II. LEGAL STANDARD

### A. Objections to a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report. 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews, *de novo*, "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original

5

petition.") (citation and internal quotation marks omitted). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal. The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz*, No. 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted). Finally, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851 (NGG)(RML), 2006 WL 2524187, at *2 (E.D.N.Y. Aug. 30, 2006).

### B. Vacating an Arbitration Award

"[T]o avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation, arbitral awards are subject to very limited review." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (quoting *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) (quotation marks omitted)). Section 10(a) of the Federal Arbitration Act ("FAA") "sets forth specific grounds for vacating" an arbitration award. *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011). Under that provision, an award may be vacated only under one of the following four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Because the FAA supports a 'strong presumption in favor of enforcing arbitration awards . . . the policy of the FAA requires that the award be enforced unless one of those grounds is

6

affirmatively shown to exist.'" *Jock*, 646 F.3d at 121 (quoting *Wall Street Assocs., L.P. v. Becker Paribas Inc.*, 27 F.3d 845, 848 (2d Cir. 1994)).  In addition to the grounds for vacatur specified in § 10(a), there is an additional, "judicially-created ground, namely that an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Id.* (citation and quotation marks omitted).

A party seeking to vacate an arbitration award under the manifest disregard standard must show "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westerbeke Corp. v. Daihatsu Motor Co. Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002) (citation omitted).  "An arbitral award may be vacated for manifest disregard of the law only if a reviewing court . . . finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Wallace v. Buttar*, 378 F. 3d 182, 189 (2d Cir. 2004) (quotation marks and citation omitted).  "A federal court may not conduct a reassessment of the evidentiary record." *Id.* at 193.  Accordingly, an arbitral award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Id.* at 190 (citation omitted) (emphasis omitted).

### III. DISCUSSION

CEL presents two broad objections to the Judge Aaron's Report and Recommendation. First, CEL objects that Magistrate Judge Aaron "misstated and misapplied the law on arbitrators exceeding their powers."  Objections at 13 (capitalization altered).  Second, CEL objects that Judge Aaron "failed to appreciate" that the Panel majority acted in manifest disregard of the law by declining to enforce Clause 52 in these circumstances and failed to recognize that the order by the Venezuelan government provided grounds for a "restraint of princes" defense.  *See* Objections at 21 (capitalization altered).

CEL's objections are meritless.  CEL first focuses on a single sentence in Judge Aaron's

7

Report and Recommendation—that "a court will not vacate an arbitral award under Section 10(a)(4) [of the FAA] unless the petitioner can show that the arbitrators lacked the authority to reach that issue," R&R at 19—to argue that Judge Aaron misstated the law. In essence, CEL argues that the "gravamen" of its argument is that the Panel majority manifestly disregarded the law, not that it "lack authority to reach" the issue that formed the basis for the award. Objections at 13-14. In context, however, it is clear that Judge Aaron correctly stated the law for a petition to vacate an arbitration award. *See* R&R at 18-20. The very next sentence of Judge Aaron's Report and Recommendation states that "[i]n addition to the explicit provisions of the Convention and the FAA, the Second Circuit has added a gloss on FAA § 10(a) which allows a district court to vacate where the award evidences 'manifest disregard' of the law." *Id.* at 20 (citation omitted). And in his analysis, Judge Aaron noted that "CEL argues that the Panel majority exceeded their powers under FAA § 10(a)(4) and that they acted in manifest disregard of the law." *Id.* at 21. Hence, Judge Aaron did not misstate the law and, even under a *de novo* standard of review, this objection is unpersuasive.

The rest of CEL's "objection" to the Report and Recommendation is simply a rehashing of arguments presented to Judge Aaron. Indeed, as noted by Pioneer, "[l]arge swaths of the Objections, including several full pages, have simply been cut and pasted verbatim (or nearly so, with the exception of a few words changed and a paragraph or two omitted) from the original vacatur application." Response at 18 (*comparing* Memorandum of Law in Support of Motion To Vacate Arbitration Award ("Mem."), Dkt No. 10, at 17-25 *with* Objections at 12-22). Such objections warrant only clear error review. *See Ortiz*, 558 F. Supp. 2d at 451; *Vega*, 2002 WL 31174466, at *1.[3] The Court has reviewed Judge Aaron's thorough Report and Recommendation

---

[3] CEL attempts to repackage arguments that it made to Judge Aaron by objecting to Judge Aaron's conclusion that "CEL has not shown any relevant law that the Panel disregarded, let along manifestly disregarded." R&R at 22. However, CEL presented essentially the same arguments regarding law that the Panel majority allegedly "manifestly disregarded" to Judge Aaron. *Compare* Mem. at 22-25 (arguing that the Panel majority manifestly disregarded the legal principle that the parties were entitled to define *force majeure* and allocate the risk of non-performance as they saw fit and that the Panel majority manifestly disregarded the law on what constitutes "restraint of princes") *with* Objections at 24-27 (same). Hence, clear error review is warranted.

8

and concludes that it does not contain clear error.

The same conclusion would apply even if the Court reviewed Judge Aaron's conclusions under a *de novo* standard of review. The Report and Recommendation is thorough, well-reasoned, and correct. Judge Aaron employed the proper legal standards, accurately recited the facts, and correctly applied the law to the facts. It is clear from the Panel Majority's decision that it was aware of, and applied, the applicable the law on *force majeure* clauses or the restraint of princes defense. CEL may disagree with its application of that law to the facts of this case. But that is not enough to show, as CEL must, that the Panel Majority manifestly disregarded the law. Accordingly, even reviewing that decision *de novo*, CEL's arguments do not succeed.

**IV. CONCLUSION**

For the foregoing reasons, the Court accepts and adopts the thorough and well-reasoned Report and Recommendation in its entirety. Hence, Pioneer's petition to confirm the arbitration award is GRANTED, CEL's motion to vacate the arbitration award is DENIED, and the Final Award is CONFIRMED.

The Clerk of Court is directed to enter judgment in favor of Petitioner and to close this case.

SO ORDERED.

Dated: March 3, 2020
New York, New York

GREGORY H. WOODS
United States District Judge